**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

JOAN HARVEY,

Plaintiff,

- against –

DELTA AIR LINES, INC.,

Defendant.

**Civil Action No. 1:23-cv-02662-HG**

**ORAL ARGUMENT REQUESTED**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DELTA AIR LINES, INC.'S MOTION FOR SUMMARY JUDGMENT**

**MORGAN, LEWIS & BOCKIUS LLP**
Ira G. Rosenstein
Michael F. Fleming
101 Park Avenue
New York, NY 10178-0060
Phone: (212) 309-6000
Fax: (212) 309-6001
ira.rosenstein@morganlewis.com
michael.fleming@morganlewis.com

*Attorneys for Defendant Delta Air Lines, Inc.*

Dated: May 20, 2024

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. PLAINTIFF'S PURPORTED COMPARATOR "EVIDENCE" DOES NOT PRECLUDE SUMMARY JUDGMENT. .......... 1

A. Plaintiff's "statistical" analysis does not withstand any scrutiny. .......... 2

B. Plaintiff's other "comparator" evidence does not establish discrimination. .......... 4

II. PLAINTIFF'S ALLEGATIONS THAT DELTA VIOLATED REGULATIONS AND/OR POLICIES DO NOT PRECLUDE SUMMARY JUDGMENT. .......... 5

A. Delta Complied With FAA Regulations. .......... 5

B. Delta Complied With Delta Policies. .......... 7

III. PLAINTIFF'S UNSUPPORTED CONTENTION THAT SHE WAS CANDID WITH DELTA DOES NOT PRECLUDE SUMMARY JUDGMENT. .......... 8

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Estate of Airday v. City of New York*,
No. 22-1081-CV, 2023 WL 4571967 (2d Cir. July 18, 2023)....................3

*Bright v. Coca Cola Refreshements USA, Inc.*,
No. 12 CIV. 234 BMC, 2014 WL 5587349 (E.D.N.Y. Nov. 3, 2014), *aff'd*, 639 F. App'x 6 (2d Cir. 2015) ....................8

*Davis v. Metro N. Commuter R.R.*,
No. 21-CV-387, 2023 WL 4080892 (S.D.N.Y. June 20, 2023), *aff'd in part, vacated in part, remanded in part*, No. 23-1041-cv, 2024 WL 1434284 (2d Cir. Apr. 3, 2024)....................3, 4

*Drake v. Delta Air Lines, Inc.*,
No. 94-CV-5944, 2005 WL 1743816 (E.D.N.Y. July 21, 2005), *aff'd*, 216 F. App'x 95 (2d Cir. 2007)....................2, 3

*Kennedy v. City of N.Y.*,
570 F. App'x 83 (2d Cir. 2014) ....................9

*Lee v. Grocery Haulers, Inc.*,
No. 22-680, 2023 WL 8253089 (2d Cir. Nov. 29, 2023) ....................1

*Reynolds v. Barrett*,
685 F.3d 193 (2d Cir. 2012)....................2

*Romero v. St. Vincent's Servs., Inc.*,
No. 22-1476-CV, 2023 WL 3477161 (2d Cir. May 16, 2023) ....................1

*Stratton v. Ernst & Young, LLP*,
No. 15-CV-1047, 2016 WL 6310772 (S.D.N.Y. Oct. 27, 2016)....................2, 3

**Other Authorities**

14 C.F.R. § 91.17....................5, 6

14 C.F.R. § 120.217(d) ....................6

14 C.F.R. § 120.217(d)(1)....................5

14 C.F.R. § 120.217(d)(2)....................6

14 C.F.R. § 120.217(d)(4)(ii) and (iii) ....................7

14 C.F.R. § 120.227(a) ....................5

FAA's Q&As for Safety Sensitive Employees, (available at https://www.faa.gov/about/ office_org/headquarters_offices/avs/offices/aam/drug_alcohol/policy/qa_sse/a 11) ....................6

## INTRODUCTION[1]

Plaintiff's Opposition to Delta's Motion for Summary Judgment fails to identify any legal or factual basis upon which this Court should deny Delta's Motion. Plaintiff's Opposition relies on a flawed "statistical analysis" and distinguishable "comparator" records; a complete misreading of FAA Regulations and Delta Policies; and, incredibly, an argument that Plaintiff was candid with Delta during its investigation into her violation of the safety-sensitive policy prohibiting employees from consuming *any* alcohol (regardless of amount) within eight hours of their report time. Plaintiff's arguments are contradicted by the weight of the evidence, which conclusively establishes that Delta treated Plaintiff the same as other employees who violated the Pre-Duty Use Prohibition consistent with all applicable regulations and policies. For the reasons set forth further below, and in Delta's Opening Brief, this Court should grant Delta summary judgment.

## ARGUMENT

### I. PLAINTIFF'S PURPORTED COMPARATOR "EVIDENCE" DOES NOT PRECLUDE SUMMARY JUDGMENT.

Plaintiff argues that purported comparator "evidence" satisfies both her *prima facie* and ultimate burdens at the summary judgement stage.[2] (Pl. MOL, p. 15-20, 25.) Plaintiff's comparator "evidence" consists of a flawed "statistical" analysis and a misguided attempt to

---

[1] All abbreviations and defined terms have the same meaning as in Delta's Local Rule 56.1 Statement of Undisputed Material Facts (Dkt. 33-2) and Memorandum of Law in Support of its Motion for Summary Judgment ("Opening Brief" or "Delta MOL"; Dkt. 33-1). Unless otherwise noted, all exhibit citations refer to exhibits to the Fleming Declaration (Dkt. 33-4). "Plaintiff's Opposition" consists of Plaintiff's Memorandum of Law ("Pl. MOL"; Dkt. 34), Plaintiff's Affidavit ("Pl. Aff."; Dkt. 36), Plaintiff's attorney's declaration ("DiGiulo Decl."; Dkt. 37), and Plaintiff's Counterstatement of Material Facts ("CMF"; Dkt. 35).

[2] Plaintiff misstates her evidentiary burdens at this stage. (*Compare* Pl. MOL, n.6 *with Lee v. Grocery Haulers, Inc.*, No. 22-680, 2023 WL 8253089, at *1 (2d Cir. Nov. 29, 2023) ("[A] plaintiff bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination." (citations omitted)); *Romero v. St. Vincent's Servs., Inc.*, No. 22-1476-CV, 2023 WL 3477161, at *2 (2d Cir. May 16, 2023) ("[P]laintiff must establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination." (citation omitted)).

analogize her termination to the highly distinguishable circumstances of another employee. Plaintiff's "evidence" is both unreliable and insufficient to preclude summary judgment.

**A. Plaintiff's "statistical" analysis does not withstand any scrutiny.**

It is well-settled that "[s]tatistics alone do not suffice to establish an individual disparate treatment claim for a very good reason: the particular plaintiff must establish [s]he was the victim of racial discrimination." *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012). "[I]n the case of statistics introduced to show disparate treatment, because intent is the critical issue, only a comparison between persons evaluated by the same decision-maker is probative of discrimination." *Stratton v. Ernst & Young, LLP*, No. 15-CV-1047, 2016 WL 6310772, at *5 (S.D.N.Y. Oct. 27, 2016) (internal quotation marks and citations omitted). Statistical evidence also "must account for other possible causes of the disparity" and "employ some form of regression analysis to eliminate other possible bases for the disparity." *Drake v. Delta Air Lines, Inc.*, No. 94-CV-5944, 2005 WL 1743816, at *8 (E.D.N.Y. July 21, 2005), *aff'd*, 216 F. App'x 95 (2d Cir. 2007) (citations omitted).

In an apparent effort to manufacture compelling statistical "evidence," Plaintiff's counsel has submitted a "summary chart," which they represent reflects "true and correct information" excerpted from Delta's records. (DiGiulio Decl., ¶ 11, Ex. 9, p. 7.) Plaintiff's "statistical" analysis of this "summary chart" does not address the proper comparator group, nor does it account for other possible causes of the alleged disparity. (*See* Pl. MOL, p. 15-19, 25; DiGiulio Decl., ¶ 11, Ex. 9, p. 7.) Indeed, Plaintiff's analysis broadly groups all "non-white" employees together, and does not examine those in the same protected category as Plaintiff (i.e. Black), nor does it address employees under the age of 40. Instead, Plaintiff offers a "summary" focusing only on older employees (i.e. over the age of 40), but offers no comparison to younger employees. Likewise, Plaintiff offers no suggestion that there were *any*, nonetheless disproportionately more, white or

younger employees who were not disciplined for engaging in the same conduct as Plaintiff. Plaintiff also does not suggest that Black and older employees are terminated at a disproportionately higher rate when compared to the demographic makeup of all Delta employees or Delta flight attendants. Rather, Plaintiff cherry picks and blends groups of data to attempt to suggest an inference of disparate treatment, but such inference simply is not supported.

Even further, a cursory comparison of the "summary chart" to the records it purports to summarize confirms that Plaintiff's "analysis" does not account for the fact that the underlying records concern decisions made by different managers, under different circumstances, based on different violations of Delta's Alcohol Policy. (*Compare* DiGiulio Decl., Ex. 9, p. 2-6 *with id.* p. 7.) As Delta explained in its Opening Brief, in order for a co-worker to be considered "sufficiently similar" to Plaintiff such that different treatment could give rise to an inference of discriminatory intent, the co-worker's misconduct must be "comparably serious" to the Plaintiff's misconduct, *Estate of Airday v. City of New York*, No. 22-1081-CV, 2023 WL 4571967, at *1 (2d Cir. July 18, 2023), and courts strictly construe what constitutes "comparably serious" conduct, *see, e.g.*, *Davis v. Metro N. Commuter R.R.*, No. 21-CV-387, 2023 WL 4080892, at *7–8 (S.D.N.Y. June 20, 2023), *aff'd in part, vacated in part, remanded in part*, No. 23-1041-cv, 2024 WL 1434284 (2d Cir. Apr. 3, 2024). Delta submitted unrebutted evidence both that violations of the Pre-Duty Use Prohibition are considered more serious than other Alcohol Policy violations, and that only one other one other New York-based flight attendant – who was younger than Plaintiff and did not identify as Black – has violated the prohibition in the last five years and also was terminated.[3] (*See* 56.1 ¶ 99.)

[3] Plaintiff's footnote regarding the scope of records produced is irrelevant. Those records were produced pursuant to an agreement between the parties and Plaintiff never sought intervention from the Court to cure any perceived discovery deficiency. *See Drake*, 2005 WL 1743816, at *9.

Even if the comparator group was expanded to include any type of violation of Delta's Alcohol Policy (and it properly could not be), the results do not suggest any form of discrimination. Notably, of the seven other employees Plaintiff identifies as being terminated for a "first offense" (as defined by Plaintiff), only one identified as Black, one identified Latino, two identified as White, and three identified as "Two or More Races." (*See* DiGiulio Decl., Ex. 9, p. 7.) In that same group, four were under the age of 40, and three were over the age of forty (including one 41 year old). (*See id.*) Consequently, even Plaintiff's "summary chart" supports that employees of different races and younger than Plaintiff were also terminated for "first offense" violations.

**B. Plaintiff's other "comparator" evidence does not establish discrimination.**

Plaintiff also seeks to analogize her circumstances with those of an individual she identifies as "ST." (Pl. MOL, p. 18-19.) ST is not a proper comparator to Plaintiff for a number of reasons, including because she was an Atlanta-based flight attendant, who had a different manager than Plaintiff, and violated a different part of the Alcohol Policy. (DiGiulio Decl., Ex. 9, p. 8-9.) Further, ST's policy violation was identified because of a random alcohol test – not eyewitness reporting – after which ST agreed to undergo a treatment program and, as a condition of being reinstated to her position, agreed to a "continuing care agreement." (*See id.*, p. 10-11.) By contrast, Plaintiff never admitted that she violated Delta's policy or that she needed help through substance treatment. Instead, she offered a shifting series of excuses for why she was sitting alone at a table with a half-drank glass of beer less than eight hours before her flight time. *See Davis*, 2023 WL 4080892, at *7–8 (co-worker not a comparator where he agreed to resolve misconduct charges).

As stated above and as Plaintiff acknowledges in her MOL (*See* p. 19), Delta considers these violations to be materially different. Notably, while an employee could fail a random test based solely on permitted alcohol consumption prior to eight hours before report time, a violation of the Pre-Duty Use Prohibition concerns active misconduct by an employee within the eight hour

period. Further, because Plaintiff refused to admit that she had violated the policy, it would have been nonsensical to offer her conditional reinstatement subject to a continuing care agreement. Plaintiff cannot both claim that Delta should have believed her that she did not drink alcohol Pre-Duty and also argue that Delta should have allowed her to seek treatment for alcohol abuse. Plaintiff's argument attempts to put Delta in a lose-lose scenario.

## II. PLAINTIFF'S ALLEGATIONS THAT DELTA VIOLATED REGULATIONS AND/OR POLICIES DO NOT PRECLUDE SUMMARY JUDGMENT.

Plaintiff also argues she can establish pretext based upon purported violations of FAA regulations and Delta's Alcohol Policy. (Pl. MOL, p. 20-23.) These arguments do not withstand any scrutiny. Plaintiff's interpretation of the regulations and policies is inconsistent with their text, and the undisputed facts establish that there were no violations.

### A. Delta Complied With FAA Regulations.

Plaintiff relies heavily on FAA Regulation 14 C.F.R. § 120.217(d)(1), which sets forth the requirements for "Reasonable Suspicion" alcohol testing. (Pl. MOL, p. 20-21.) However, Plaintiff completely misconstrues this regulation and misapplies it to the undisputed facts of this case. Critically, the testing regulations **do not apply to employees when they are outside of the United States.** *See* 14 C.F.R. § 120.227(a) ("No covered employee shall be tested for alcohol misuse while located outside the territory of the United States."). It is undisputed that Plaintiff was in Accra, Ghana at the time she was observed by two witnesses violating the Pre-Duty Use Prohibition. (CMF, ¶¶ 17-19, 118-119.) While the testing regulations do not apply outside of the United States, covered employees are still prohibited by FAA regulations and Delta policy from consuming alcohol within eight hours of providing safety-sensitive functions, and Delta and the employees can be subject to civil and criminal penalties for violating that prohibition. *See* 14

C.F.R. § 91.17.[4] Accordingly, while Delta did not have the capacity or authority to test for alcohol at the Accra airport, nor was it required to do so, the prudent course of action was to remove Plaintiff from her flight based on eye-witness accounts provided to Delta.

Plaintiff also misstates what constitutes "Reasonable Suspicion" to test an employee under 14 C.F.R. § 120.217(d). While Plaintiff appears to proffer a plain meaning of the term, the regulations set forth strict criteria that must be met before Delta is permitted to conduct "Reasonable Suspicion" testing – including that there be "specific, contemporaneous, articulable observations" of *intoxication,* which only can be "made by a supervisor who is trained in detecting the symptoms of alcohol misuse." *See id.* at § 120.217(d)(2). Plaintiff has not established that any of these conditions were met; indeed, she actually disputes that several could have been satisfied. (*See, e.g.*, CMF ¶ 147.) Moreover, Delta did not accuse Plaintiff of being *intoxicated*, but instead concluded she violated the policy prohibiting her from consuming *any* alcohol within eight hours of duty. Thus, Plaintiff's conduct relates to a different portion of Delta's Alcohol Policy—the Pre-Duty Use Prohibition *not* the Reasonable Suspicion protocol. Under these circumstances, Delta was not authorized or able (given the location) to conduct "Reasonable Suspicion" testing of Plaintiff, but Delta was required to remove Plaintiff from the flight.

Finally, Plaintiff's contention that the FAA Regulations prohibit Delta from taking any action against Plaintiff without first testing her for alcohol is both nonsensical and contradicted by the same part of the regulations she cites to. There should be no dispute that Delta can and should address safety concerns when they are brought to its attention – particularly when eye-witnesses

---

[4] *See also* FAA's Q&As for Safety Sensitive Employees, (flight crews "are not subject to [their] employer's FAA-mandated testing program (required under 14 CFR part 120)" when flying internationally, but are subject to 14 C.F.R. § 91.17) (available at https://www.faa.gov/about/office_org/headquarters_offices/avs/offices/aam/drug_alcohol/policy/qa_sse/a11).

raise those concerns. Indeed, FAA Regulations prohibit Delta from allowing employees who have consumed alcohol to perform safety-sensitive functions even without a "Reasonable Suspicion" test, but permit Delta to take any other legal action. 14 C.F.R. § 120.217(d)(4)(ii) and (iii).

**B. Delta Complied With Delta Policies.**

Plaintiff also cannot establish that Delta did not comply with its own Alcohol Policy. Plaintiff's argument that Delta violated its policies because those policies "incorporate the FAA Regulations" fails for the same reasons stated above. *See* Pt. II(A) *supra.* Delta's policy also does not require it to test employees for alcohol consumption where the employee has been observed consuming alcohol in violation of the policy. (*See* Ex. G, at p. 5-7 (setting forth circumstances when testing is required); *see also* DiGiulio Decl., Ex. 6, 54:19–55:8 (explaining that "Reasonable Suspicion" has "specific parameters around testing protocols" and is different from a situation where an employee is observed violating the policy).) This is logical where, as here, Delta terminated Plaintiff for consuming alcohol within the Pre-Duty Prohibition period, *not* for being intoxicated—thus testing was not only *not* required by FAA regulation or Delta policy, but it similarly was not pertinent to Delta's investigation and conclusions. Plaintiff's contention that Delta is "required to be able to test for alcohol in any location" and "when it needs to test for alcohol in Accra[,] it does so at a nearby medical facility" (Pl. MOL, p. 20) also is not supported by the deposition testimony she claims to rely on (*compare* CMF, ¶ 196 *with* DiGiulio Decl., Ex. 5, 17:8-13).[5] Plaintiff similarly misconstrues the deposition testimony she relies on for her claim that Delta "violated its own EO policies by failing to investigate Plaintiff's claim of discrimination." (Pl. MOL, p. 23.) EO Investigator Jim Brimberry testified that the EO appeal process consists of a review of new information provided by the appealing party, as well as

[5] Although Delta granted Plaintiff's request to stay in Accra another day, Plaintiff apparently never sought to get herself tested for alcohol or, if she did, she never presented those test results to Delta.

consultation with the HR manager who was involved in the termination decision. (DiGiulio Decl., Ex. 6, 55:24 -56:22.) Mr. Brimberry testified that he conducted his review in accordance with that process and found Plaintiff did not provide any new information to substantiate her claims. (*Id.* at 58:12-20; *see also* Ex. N (detailing the steps of Plaintiff's EO appeal review).) Therefore, the undisputed evidence establishes that Delta complied with its EO appeal procedures.

## III. PLAINTIFF'S UNSUPPORTED CONTENTION THAT SHE WAS CANDID WITH DELTA DOES NOT PRECLUDE SUMMARY JUDGMENT.

Finally, Plaintiff argues that she can establish pretext because Delta's conclusion that she lacked candor during the investigation was "blatantly false." (Pl. MOL, p. 23.) Plaintiff's argument is absurd. As Delta explained at length in its Opening Brief (*see* MOL, p. 3-14, 22-25), Plaintiff provided several different and factually inconsistent versions of the events of October 18, 2021, to Delta prior to her termination. Contemporaneous records establish that Delta's managers compared Plaintiff's shifting version of events with the other witness statements, as well as the information the managers learned from contacting the hotel in an effort to corroborate Plaintiff's claims. The record is devoid of any suggestion that Plaintiff's race or age played any role in this determination. In the absence of such evidence, the Court should not second guess Delta's determination. *See, e.g.*, *Bright v. Coca Cola Refreshements USA, Inc.*, No. 12 CIV. 234 BMC, 2014 WL 5587349, at *18 (E.D.N.Y. Nov. 3, 2014), *aff'd*, 639 F. App'x 6 (2d Cir. 2015) ("It is not the role of the Court to sit as a superpersonnel department, and re-weigh the facts in order to determine whether discipline was justified under defendant's policies in this particular instance. Defendant's decision to discipline [plaintiff] need not be correct; it just cannot be retaliatory.").

Incredibly, in her Opposition, Plaintiff advances yet another story about October 18th – one that contradicts not only the prior versions she told to Delta, but also the facts she testified to under oath. (*See* Pl. Aff., ¶¶ 10-20.) Plaintiff now claims that, after she had a "malt cider" with Helen

Sampson David at the Pool Bar, Ms. David left and Mike Tettey (her Uber driver) joined Plaintiff, ordered "something that [Plaintiff] believed to be beer," and then also left before drinking the beer. (*Id.*, ¶¶ 17-20.)  Never before has Plaintiff claimed that she had drinks with both Ms. David and Mr. Tettey.  (*See* Ex. I.)  Plaintiff also did not testify Mr. Tettey was at the Pool Bar; in fact, she testified that Captain Corrao approached her after Ms. David left the bar.  (*See* Pl. Tr. 71:13-17.) In her new story, Plaintiff also claims that, while at the Pool Bar, she tried to call "Delta's 1-800 number" and that she also was texting with Mr. Tettey.  (*See* Pl. Aff. ¶¶ 19-20.)  However, Plaintiff testified that she did not have her phone with her at the bar because she had left it in her room.  (Pl. Tr. 67:2-6.)  The Court should not credit the new, eleventh-hour version of events set forth in Plaintiff's Affidavit.  *See Kennedy v. City of N.Y.*, 570 F. App'x 83, 84 (2d Cir. 2014) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." (citation omitted)).  But even if the Court does, there is absolutely no evidence that Plaintiff told this story to Delta before she was notified about her termination.  (*See* Ex. I.)  Therefore, this version of events – in addition to being incredible – also is irrelevant to Delta's decisionmaking. Likewise, this new version only further supports Delta's conclusion that Plaintiff has offered shifting, inconsistent narratives to explain her conduct.

Plaintiff even goes so far as to mischaracterize the written statements and deposition testimony of Delta's witnesses in a failed effort to attack their credibility.  Plaintiff absurdly argues Captain Corrao and Ms. Harps "changed" their stories by simply clarifying what each meant when they reported they saw Plaintiff "drinking."  Those clarifications are not comparable to the material changes in Plaintiff's story, in which Plaintiff variously has claimed to have ordered different drinks, with different individuals, of different genders, and given different reasons for why those

drinks remained on Plaintiff's table when Captain Corrao approached her.[6] In any event, there is absolutely no evidence in the record that Captain Corrao or Ms. Harps (or Ms. Passman, Mr. Gilmartin, Mr. Sooknanan, Ms. Pardo, Mr. Jackson, and/or Mr. Brimberry) had any reason to fabricate a story about Plaintiff. However, Plaintiff would have the Court believe that these employees – none of whom knew Plaintiff – developed a coordinated and elaborate conspiracy to accuse her of drinking alcohol to get her fired. The record further establishes that, after investigating the incident, Delta credited the two eyewitness accounts (which were consistent) and the information obtained directly from the hotel employees, over Plaintiff's accounts (which were not). Plaintiff's speculation – which she asks the Court to adopt as fact – that Delta did so based upon the race and age of the witnesses is without evidentiary support and cannot carry her burden to establish pretext at the summary judgment stage.

## CONCLUSION

For the reasons set forth above and in Delta's Opening Brief, Delta respectfully requests that the Court grant it summary judgment and dismiss all of Plaintiff's claims with prejudice.

Dated: May 20, 2024

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**
*/s/ Ira G. Rosenstein*
Ira G. Rosenstein
Michael F. Fleming
101 Park Avenue
New York, NY 10178-0060
ira.rosenstein@morganlewis.com
michael.fleming@morganlewis.com

*Attorneys for Defendant Delta Air Lines, Inc.*

[6] Plaintiff's mischaracterization of Ms. Passman's involvement in the incident is also telling. Ms. Passman testified that she did not accuse Plaintiff of stealing alcohol. (DiGiulio Decl., Ex. 5, p. 33:8-16.) While Mr. Gilmartin's notes of his call with Ms. Passman indicate that she speculated alcohol may have been removed from the flight, they also state that she "did not have specifics when asked," (Ex. J), there are no other references to removing alcohol from the flight anywhere else in the record, and Delta did not terminate Plaintiff for removing alcohol from the flight.